Can I have those arguing for the appellant and the appellee approach the podium, please? And identify yourselves. Good morning, Your Honors. Assistant State's Attorney Caitlin Corcoran on behalf of the people. Jonathan Amorilio on behalf of the defendant appellant. All right. Well, we'll have 15 minutes per side. And the appellant, you may reserve time for rebuttal if you wish to do that. All right. Thank you. All right. Whenever you're ready, we may proceed. Before you start, I want to ask you one question. Edgar C., when does he turn 21, do you know? I believe that involves a different case, Your Honor. Pardon? I believe that involves a different case. All right. Go ahead. Good morning, Your Honors. May it please the Court. My name is Jonathan Amorilio. And again, I represent the defendant appellant, Mr. Sherrod Pierce. Your Honors, this appeal concerns the conviction of Mr. Pierce for the first degree murder of Anthony Carter. Mr. Pierce was convicted of murdering Carter and subsequently sentenced to 60 years imprisonment based entirely on the testimony of three purported eyewitnesses. There was no physical evidence. There was no gun. There were no fingerprints. There was nothing else linking Mr. Pierce to the shooting. The testimony of those three witnesses, particularly their credibility, was therefore the central issue at trial. Yet two critical errors made by the trial court, both of which directly affected the credibility of those witnesses, deprive Mr. Pierce of a fair trial and therefore necessitate a new trial here. The State argues throughout its brief that any error committed by the trial court affecting the credibility of those witnesses was irrelevant or harmless because the evidence against Mr. Pierce, again, simply the testimony of those three witnesses, was, quote-unquote, overwhelming. As the Court, I'm sure, is well aware from the briefing and the record, however, that's hardly the case. I won't recount all the testimony. Again, I know the Court's familiar with it, but it's sufficient to say that none of the accounts at trial from any of the witnesses, McCollum, Wilson, or Cole, were consistent. The State's case rested entirely at best on what could be very fairly characterized as the inconsistent testimony of three intoxicated and possibly coerced gangbangers. As a result, any error committed by the trial court impacting the already shaky credibility of those witnesses can't be fairly characterized as irrelevant or harmless as the credibility of those witnesses was at the very heart of the State's case. Unfortunately, we know that there were two critical errors committed by the trial court affecting their credibility. The first critical error made by the trial court concerned its decision to exclude certain 911 tapes made by bystanders within seconds of the shooting, two of which, what we refer to as the first and third calls in our brief, describe very much what sounds like a drive-by shooting rather than the face-to-face, on-foot confrontation described by Wilson and McCollum at trial. The trial judge excluded the 911 tapes as an admissible hearsay because he found that they didn't meet the excited utterance exception. Specifically, he said that the callers were describing something that already occurred rather than something happening in the moment because it wasn't clear to the trial judge whether the callers were relaying firsthand information, because the callers' identities were unknown, and because the trial judge didn't believe the first and second callers' voices sounded sufficiently agitated to qualify as excited utterances. As this Court is well aware, however, that is not the test for the excited utterance exception to the hearsay rule. Statements are admissible as excited utterances or spontaneous declarations if, one, there's an occurrence, like a shooting, sufficiently startling to produce a spontaneous and unreflective statement. Two, there's an absence of time for the declarant to fabricate the statement. And three, the statement relates to the circumstances of the occurrence. Here, all three of those requirements were met. Regarding the first, the occurrence of a startling event, I don't think it's even arguable that a shooting in the middle of a crowded street is an objectively startling event. In a statement describing such a shooting, a mere 30 to at latest 120 seconds later is, for the greater mass of humanity, obviously still made in the moment of excitement. Did any of these people who made these utterances, did they see the shooting? The third caller did, Your Honor. He described a drive-by shooting. He said that a car came down the block and, quote, said he started shooting. So one? One of the three, correct, Your Honor. It's not just my opinion that that qualifies as a startling event, however. I would direct the Court's attention to People v. Georgia Kapoulis, 303 Illab 3rd, 1001, a 1999 case from this Court. It was another gang-involved shooting, and this Court recognized in that case that shootings like this constitute startling events sufficient to satisfy the excited utterance exception. So with regard to the third caller who described what you say is describing a drive-by shooting, how does the Court know that this is a person who made this observation and was describing it after making this observation? Just by the content of the call? By the content. Doesn't there have to be some corroborative evidence that this isn't just somebody picking up a telephone and talking to the police? Doesn't somebody have to get on the witness stand in the courtroom and say, you know, I made this phone call, I saw this? Or even have another person say, you know, this person made this call in my view and he was excited? I mean, doesn't it have to be something other than just a phone call? There doesn't, Your Honor. People v. Fields. People v. McNeil. People v. Lane. But in Fields, the witness on the stand in the courtroom described what the bystanders were doing when she called out to them and said, get the license number, and she described the fact that they were there. That's not the situation. This is a situation where there's nobody on the witness stand that can place this caller on the scene. We don't even know that this caller is on the scene. We do, Your Honor. We hear, if you listen to the tape, we hear police in the background. There's crying and yelling in the background. I think it's fairly clear, and even the state doesn't contend, that they were on the scene. And going to your question, a U.S. Supreme Court case, people v. White, 502 U.S. at 355, explained that excited utterances have inherent weight in and of themselves and don't require the unavailability of the declarant. With regard to the second requirement for an excited utterance timing, the first call is placed less than half a minute after the shooting. The second call, immediately after that. The third call, 120 seconds later, less than two minutes after the first call. This court found, in cases like people v. Georgia Kapoulis, that statements made 10 to 20 minutes after a startling event can qualify as excited utterances. So surely statements made 30 seconds to at the latest two minutes after such an event can qualify under that standard as well. Didn't each caller refer to separate circumstances that they allegedly viewed? So how was the court to determine which one to let in or not? One describes people running down the street. The other one describes a vehicle. So how was the court supposed to determine which call comes under excited utterance? Well, I believe the first and third calls were consistent with each other. The second call is somewhat of an outlier. It describes people running away several blocks away. But the first call describes the caller who heard the shooting and then saw a car take off from the scene. The third call describes a drive-by shooting. The first call by itself might not be very exculpatory, but when considered in conjunction with the third, a car speeding away from the scene, it is credible and I think the judge should have let both of them in on that basis. It's exculpatory. And these are two separate callers, correct? Correct, Your Honor. All right. Well, didn't the first caller say that somebody got into the gray car? I don't believe so, Your Honor. Not that I recall. Okay. Unlike the present sense impression, which respectfully I believe is what the trial court conflated with the excited utterance exception here, for a statement to be admissible as an excited utterance, the declarant need not be describing the event as it occurs, which was one of the basis for excluding it that the trial court noted. People v. Dominguez, which we cite in our brief, makes it very clear that an excited utterance, for an excited utterance to be admissible,  And again, people v. Georgia Kapulis, a case where the statement was made 10 to 20 minutes later, qualifies under that same standard. So surely a call placed 30 seconds after the event qualifies. As to the final requirement for an excited utterance, the first caller is describing the scene of a crime. Again, quite possibly the getaway, the car speeding away, mere seconds after the crime's commission. And the third caller describes the shooting directly, stating the caller observed what sounds like a drive-by shooting. People v. Fields, which you alluded to, Your Honor, tells of statements describing the immediate aftermath of a crime, including the flight of the perpetrator, are admissible as excited utterances. There is simply no requirement in the law that a declarant must see the actual crime itself, the shooting in this case. But didn't the court make note of the fact, in discussing the foundation for an excited utterance, didn't the court there make note of the fact that there was a live witness in court that could describe the presence of and the perspective of those out-of-court declarants? The court did, Your Honor. But I believe, if I recall correctly, that that statement was made with regard to the defendant's confrontation clause argument, which is not at play here. There's no confrontation issue. I have another question. So we have these calls, right? How was the court able to determine from these calls the lack or absence of self-interest? I mean, we don't know who these individuals were who were making these phone calls. They never identified themselves. So how was the trial court able to determine whether or not there was a lack or absence of self-interest in those statements? There's nothing to indicate that there was any self-interest in the statements, Your Honor. However, I believe that would be a question for the jury. Moving on to the second error that the trial court made. I believe it's more straightforward than the first, but evidence is critical, if not more so, when considering the fact that the trial court did, in excluding the 911 tapes, prevent Mr. Pierce from presenting the only exculpatory evidence there was. At trial, Cordero Cole testified that he did not witness and was not at the scene of the shooting. That contradicted a statement that he supposedly made to the police earlier, that he was near the scene of the shooting, and he saw the defendant running from the scene with a gun in his hand. At trial, Cole testified that he didn't remember such an event, and he didn't remember making any such statement. But, critically, during the state's questioning of Cole, the trial judge, unprompted, in open court, and in front of the jury, said, quote, I want to spread a record. I'm going to treat the I don't remembers from an evidentiary standpoint, as indicative of a witness recalcitrant to answer the question, and not an accurate representation of whether or not he recalls. Perhaps the trial judge was frustrated with Cole. Maybe he just wanted to move the questioning along. But the judge's desire to manage his docket in that way doesn't trump Mr. Pierce's right to a fair trial. And by making that statement, by saying that Cole's testimony should be treated from an evidentiary standpoint as inaccurate, by essentially calling Cole a liar in front of the jury, the trial judge undoubtedly, inadvertently, but surely prejudicially invaded the province of the jury. This court was very clear in People v. Brown that such comments by a trial judge constitute reversible error where prejudice is the probable result. Here, prejudice wasn't just the probable result. It was the undeniable result. The trial judge told the jury, from an evidentiary standpoint, not to believe Cole's trial testimony, and thus, by implication, told the jury it should believe Cole's earlier statement to the police. Because the earlier statement was consistent with McCollum's testimony at trial that Pierce was the shooter, the trial judge essentially instructed the jury to believe McCollum, to disbelieve Cole, and that was damning to Mr. Pierce's case. At the time the trial court made that statement was the request to treat Cole as an adverse witness already made? There was no request to treat Cole as an adverse witness. The court sua sponte did it earlier, several minutes earlier, if I recall correctly. So he was already being treated as an adverse witness? He was, Your Honor. Okay. Cole didn't exculpate the defendant, did he? No, he simply said that he wasn't there and he didn't remember anything. So in your last statement you said, well, the trial court said, basically you said the trial court led the jury to believe that they should believe McCollum and not believe Cole. But Cole didn't exculpate the defendant. I mean, if you take Cole's testimony, on the one hand, he just says, I wasn't there, I didn't see it. And then his 11510 statement is, you know, the defendant did it. So it's not an either-or situation, believe Cole or believe McCollum. It's just disregard Cole, I guess. Well, I believe there's a syllogism at play here, Your Honor. If you disbelieve Cole's trial testimony, you therefore believe his earlier statement to the police. His earlier statement to the police was consistent with McCollum's testimony at trial. So, again, if you tell the court to disbelieve Cole at trial, you have to believe McCollum at trial. This court has recognized the reality that a trial judge has immense influence over the jury. This court has recognized that basic principle many, many times. And the law is therefore very clear that every defendant is entitled to a trial free from improper and prejudicial remarks made by the presiding judge. Where a judge in a criminal trial invades the province of the jury by commenting on the credibility of a witness or by displaying a hostile attitude toward that witness, as happened here, reversible error is committed and a new trial is warranted. It bears repeating, Your Honor, that this case came down entirely to the state's purported occurrence witnesses whose statements at trial were inconsistent and whose statements were of absolutely no use to the state at trial unless they were consistent. So instructing a jury from an evidentiary standpoint to believe that Cole's statement to the police was accurate and not his trial testimony, thus implying McCollum's testimony identifying Pierce as the shooter was also accurate, was tantamount to an instruction to convict. Under any standard, including plain error, that warrants a new trial, especially in a case like this, in a case this close, with so little evidence. I know this court is often confronted with criminal cases in which the public gangbangers plays a part, even a large part, of the state's case. But I was unable to find any case in which the testimony of the only testimony, rather, of the defendant's guilt was provided by such witnesses and the conviction was supported by a comment made by the trial judge affecting the credibility of those witnesses. The damage and prejudice that comes from that kind of comment can't be undone. It cannot be cured. That bell cannot be un-rung. Mr. Pierce has a right to a fair trial. He was denied that right, and that wrong should be remedied. For these reasons, Mr. Pierce asks this court to reverse his conviction and order a new fair trial. Thank you, Counsel. May it please the Court. Again, Assistant State's Attorney Caitlin Corcoran on behalf of the people. In this case, the evidence of trial established that Anthony Carter was murdered over drug sales. The defendant was upset because he thought that McCollum and Wilson were selling drugs at Jackson and Pulaski. The defendant called them over from across the street, asked if they were still hustling out there, and threatened them with a gun. When Anthony Carter approached, the defendant immediately pointed the gun at Carter and fired nine times. This court should rule in favor of the people and affirm the defendant's conviction for first-degree murder where the 911 call recordings were not relevant and the trial court properly excluded the recordings as an admissible hearsay. There were three 911 calls that issued on appeal, the first from an off-duty police officer, the second from a private security guard, and the third from an unknown civilian. None of these callers were ever found. Each of these calls was properly excluded on different bases, and I'd like to address each of those bases individually. The calls from the off-duty police officer and the security guard were irrelevant as they did not bear sufficient nexus to this case. There is no evidence to suggest that the boys seen running by either the off-duty police officer or that security guard had any involvement in this crime. Off-duty police officer stated that she did not see the shooting. She heard shots fired and saw four boys running eastbound and then saw a silver car take off westbound on Jackson. She didn't say that any of those boys was the shooter. She didn't say that any of those boys had a gun in their possession. She didn't even say that any of those boys that were running got into the car that she saw. When asked if she got a good enough view to provide a description, she said no. There simply was insufficient evidence to support an inference that either the four boys or that silver vehicle was involved in the shooting. In regards to the security guard, he stated that he was at Madison and Carl Love behind a footlocker. The shooting occurred at 4032 West Jackson, which was over four blocks away. Based on that location alone, he couldn't have been on view of the shooting. He stated that he saw four male blacks fleeing the area and that the boys were running towards him. He didn't say which direction they were running from, and he didn't say that he saw any of those boys with a gun. The boys seen running by both that off-duty officer and the security guard simply could have been bystanders. Witnesses testified that there were a lot of people on the street at night, and people fled when they heard the gunshots. Offering either of those calls to prove that the offender was one of the individuals seen fleeing or that the offender entered the vehicle referenced in the 911 tapes was completely speculative. Therefore, the calls by the off-duty officer and the security guard were properly excluded as they were not relevant to this case. In regard to that third caller, the civilian, the call from the unknown civilian was properly excluded as it was not relevant, and it also did not meet the requirements to qualify as an excited utterance. The call from that unknown civilian was not relevant because it was unclear whether he had personal knowledge of what he was reporting. And per the Illinois Rules of Evidence Number 602, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter. At trial, defense counsel called a police officer who testified that there were a large number of people on the scene in the aftermath of the shooting. The civilian caller continuously uses the pronoun we when answering the dispatcher's questions. We just don't know what kind of car. We just saw a car come down the alley. We just don't know. It was unclear whether the unknown civilian was relating his own observation or if he was making that call on behalf of the group. Do we know if there was more than one car in reference to the caller? Well, and that leads me to my next point in regards to not only is it irrelevant, but that call shouldn't have come in. The personal knowledge part of it comes into play both in terms of the relevancy as well as the excited utterance, whether or not it qualifies as an excited utterance because while counsel noted the requirements of an excited utterance, it also has to be based on that declarant's personal knowledge. So it comes into play again. Right. Not only does he continue to use the pronoun we, but there's a discrepancy. At first he says, we saw the cars come down the alley. Or, sorry. But he says a car comes down the alley. Then he says multiple cars. He says an alley. Then it turns into a street. It was unclear what he was even reporting. And further, when you look at the totality of the call, this was right after the shooting. He made the call for the purpose of securing an ambulance. There was a body on the street, and that's what he kept bringing the conversation back to. The dispatcher was asking him questions about, did you see the shooter? No, we didn't see it. There's a body on the ground. After every question that was related to him, he kept bringing it back. I mean, that was obvious that he wasn't calling for the purpose of reporting what he had seen. And it's evident both in the pronouns that he used and the fact that what he was relating was inconsistent. It was unclear to the trial court whether or not he made those personal observations himself. And therefore, the trial court probably excluded that call because he couldn't determine whether or not the declarant had personal knowledge. And even if this court finds that the trial court erred in excluding the 911 tape recordings, any error was harmless for the evidence overwhelmingly established defendant's guilt of first-degree murder. Christopher McCollum decredibly testified how defendant called him over. Defendant asked him, you all still hustling out here? He pulled the gun and pressed it against McCollum's side. When Anthony Carter approached, defendant shot him. This is corroborated by Robert Wilson. In both the handwritten statement and his first-degree testimony, Wilson identified defendant as the shooter. Corroborated again by Cordell Cole. In his handwritten statement, he said he saw defendant running from the scene with a gun in his hand. Let me ask you this. Do you think this is a close case or an overwhelming evidence case? I think it's overwhelming. Although the two of the witnesses refrained from identifying defendant as the shooter at trial, they did identify him in both a photo array and a physical line-up prior to trial. They have handwritten statements. They have injury. And that's all admitted as substantive evidence, regardless of what they said on the stand. That is all part of the evidence. What about the statement from the trial judge? Do you think that that affected anything? The statement from the one during the direct examination of Cordell Cole? I don't. I don't think it did anything because it was clear not only did the trial judge, if you look at it as a whole, based on the timing of what was going on at the time, during his direct examination he's saying, I don't know, I don't know, I don't remember, I don't remember. And he stops him and he says, you know, he makes the statement that he does. And directly after that, the people then went into the contents of Cole's statement. What's the purpose of that statement? It's to alert the people that they didn't have to continue going question by question, line by line, in an attempt to establish the foundation for his prior statement. He wasn't going to answer the question. So he was telling them get to the contents. And everybody knew. So this was the judge's way of telling the state, all right, I got it. Move it along. Go ahead and bring in his 11510 stuff. Correct. Correct. Could he have done that outside the presence of the jury? Sure. He absolutely. And you think it would have been a better practice? Probably. But nonetheless, he labeled it as an evidentiary, I mean he said from an evidentiary standpoint, he labels it as such. He also instructs the jury with IPI 1.01 saying neither by these instructions nor by any ruling or remark which I made do I indicate my opinion as to the facts or as to what your verdict should be. Well, should a trial judge give his opinion about the credibility of a witness? Well, he wasn't commenting on the credibility of the witness. As Your Honor stated, he hadn't said, Cole hadn't said anything favorable for the defendant at the point. He wasn't there. He didn't know anything. So there was no way. He didn't appear to be there. Correct. Correct. And based on the trial court statement that it was an evidentiary ruling coupled with its instruction in the jury that it wasn't indicating his opinion as to the case, this court should find the defendant has failed to establish a clear or substantial error that prejudiced him. Well, given the fact that this is a jury trial, isn't there a potential prejudice to the defendant? Since we're dealing with a jury trial here? Sure. But the jury was specifically told to disregard his comment. Disregard the judge's comment? Well, what the court was saying was that he wasn't, he was specifically saying he wasn't commenting on the credibility of the witness. He was making a ruling. Anything that he says, the jury was specifically instructed not to take as his, he was not speaking to the credibility of the witness or telling them what to do in any way. So you think it's fine for trial judges to just make comments after a witness testifies? Any comment? No. Certainly not. But in this case, I think it was couched as an evidentiary ruling, and that's how it was treated. If it was couched as an evidentiary ruling, was there an objection to make a ruling? No, there was no objection. So then how is it couched to be an evidentiary? Sorry, can you repeat? I mean, you were trying to justify what the trial judge did here. I don't see where there could be any justification for it. I mean, while it was inarticulately worded, what he was not trying to comment on, the credibility of the jury. And it clearly, the defense counsel saw no objection. Counsel did not object. And that, I mean, really gets back to the, this court shouldn't even review this issue, because the defendant has forfeited this claim. Although the defendant now argues in his brief that the forfeiture shouldn't apply based on Sprinkle, the trial counsel, Rick Boyke, is a seasoned trial attorney who afforded the defendant an extremely high level of representation. Counsel didn't object because there was nothing objectionable about what the court stated. Everyone knew what the court meant and saw nothing objectionable about that comment. And there's no evidence to suggest that counsel failed to object because he was intimidated by the court or he felt that that objection would fall on deaf ears. So this court shouldn't even attempt to rule on this issue. But if they, if you elect to do so nonetheless, this court should find that no error occurred, where the trial court's comment was an evidentiary ruling. And for these reasons and the reasons stated in the people's brief, we ask this court to affirm defendant's conviction for first degree murder. Well, let's assume we do find an error, that the judge had never made that comment whatsoever. What do you say? Any sort of error or you'd find that it, I mean, let's say we find it to be error. Should that affect? No. No. Because the evidence is still overwhelmingly in favor of defendant's conviction. And defendant has failed to establish that he was prejudiced by this. So there's no basis to apply plain error in this case. Thank you. Thank you. Thank you. Mr. Amarillo. Thank you, Your Honor. Regarding counsel's forfeiture waiver argument, Illinois courts have long recognized that the waiver rule is less rigidly applied when a trial judge's conduct is the basis of the objectionable conduct in light of the fundamental importance of a fair trial. And the practical difficulties involved in objecting to that conduct at trial. Sprinkle was clear on that point. People v. Brown was clear on that point. Moreover, as I know the court is perfectly well aware, waiver is a restriction on the parties, not the court. Whereas here, the interests of justice, this man was sentenced to 60 years imprisonment. It's the rest of his life. Demand that a court address the issue head on on the merits it should. And I would urge this court to do the same. With regard to the supposed curative instruction from the judge, it's important to emphasize it was not that by any stretch of the imagination. There was no curative instruction here. The instruction given to the jury was taken directly from the IPI, and it was given long after the judge's comment on Cole's credibility. It was given at the very end of the day. Judge Gordon, when you asked that, or whether, rather, the judge's error here should affect the outcome of this case, I believe it should. If this court says that a trial judge in a first-degree murder case is permitted to comment on the credibility of a key state witness when the state's only evidence of guilt is comprised of alleged eyewitness testimony, what's next? There's no limiting principle there. The long-established and well-founded rule in this state that judges must not comment on the credibility of a witness in front of a jury will be meaningless if that is allowed. And the defendant's right to a fair trial, a fundamental constitutional right, will have been dealt a great blow. I urge you not to start us down that path. Reverse Mr. Pierce's conviction. Order a new trial. And in so doing, make it clear to lawyers, trial judges, and the public alike that a criminal defendant's right to a fair trial is still sacred in our system of justice. Thank you. The court thanks the appellant and the appellees with regard to or for their excellent presentations, both oral and written. It's obviously a very interesting case and we will take your advice. We will take a short recess. Yeah.